## In re BECHDOLT.
### TIKALA v. CULBERT et al.
### No. 4619.

Circuit Court of Appeals, Seventh Circuit.

Dec. 2, 1931.

James J. Moran, and Frank B. Jaqua, both of Portland, Ind., for appellant.

Roscoe D. Wheat, of Portland, Ind., for appellee.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

EVANS, Circuit Judge.

On November 10, 1930, three petitioning creditors sought an adjudication of Clyde D. Bechdolt as a bankrupt. Appellant, also a creditor, intervened and contested petitioning creditors' right to the adjudication. She denied that one of the petitioning creditors was in fact a creditor of the bankrupt and also denied that bankrupt had committed the acts of bankruptcy set forth in the creditors' petition. The court found for petitioning creditors, and an adjudication followed. Appellant thereupon appealed.

The evidence amply supported the finding that each of the three petitioners was an unsecured creditor of the bankrupt, and the aggregate of their three claims was $17,040.

The only remaining question involves the alleged acts of bankruptcy.

The petition alleges that "said Clyde D. Bechdolt is insolvent and that within four months next preceding the date of this petition the said Clyde D. Bechdolt committed an act of bankruptcy, in that he did heretofore, to wit: on the 13th day of September, 1930, execute and deliver to Frank B. Jaqua, Portland, Indiana, warranty deeds, conveying all of the real estate of said Clyde D. Bechdolt, in Jay County, Indiana, thereby preferring the said Frank B. Jaqua, a creditor."

The referee found that Jaqua was a creditor of said bankrupt. He also found:

"That Clyde D. Bechdolt did execute warranty deeds for all his real estate in Jay County, Indiana, except Lot No. 16 in Johnson & Johnson's Addition to Portland, Indiana, and delivered said deeds by mail from the Indiana State Prison, Michigan City, Indiana, to Frank B. Jaqua on October 15, 1930. That the warranty deed to Lot No. 16 in Johnson and Johnson's Addition to Portland, Indiana, named Frank B. Jaqua as grantee, was delivered to Jaqua on November 3rd, 1930, and Jaqua still has said deed.

"That the deeds above referred to other than the one for Lot No. 16 were in blank and named no grantee. That they were sent to Jaqua as attorney for the intervening creditor, Martha E. Pierce Tikala, that she refused to accept said deeds and Jaqua returned them to Bechdolt on or about October 23, 1930. The returned deeds covered other city property than Lot No. 16 and two farms.

"Frank B. Jaqua took possession of the residence and real estate described in the deed to him on November 6, 1930, and is still in possession and lives therein.

\*   \*   \*   \*   \*   \*

"That at the time of the delivery of said deed for Lot No. 16 in (to) Jaqua, to wit: On November 3rd, 1930, that lot was of the value of $2750.00 to $3000.00 and no more, and that it was at said time encumbered by a valid mortgage lien and a lien for delinquent taxes in the aggregate sum of $2750; and that at said time the said Clyde D. Bechdolt was, ever since has been, and now is, a married man and a resident householder and freeholder of the State of Indiana."

The undisputed evidence upon the hearing before the referee also established the fact that bankrupt's wife joined in the deed to Jaqua. Jaqua also testified that the deeds for the various tracts of land, other than the said Lot No. 16, were mailed to him as the attorney for appellant. He testified: "This whole transaction between Bechdolt and myself was wholly for Martha E. Pierce. I had no personal interest in the transaction whatever." It further appeared that appellant, through her attorney, Jaqua, had obtained a judgment in appellant's favor in the La Porte circuit court on August 29, 1930, for $3,864.44. A certified copy was duly recorded in the Jay circuit court on August 30, 1930. It likewise appeared that bankrupt subsequently brought suit to vacate and set aside said judgment, which suit is still pending, but it does not appear when such suit was filed.

Appellant's contention that the property conveyed to Jaqua (lot 16) was incumbered for a sum in excess of its value, and, therefore, its conveyance to a creditor was not a preference, need not be considered, in view of the other facts which clearly appear and support the adjudication. This contention on appellant's part involves a dispute both as to the facts and law, while the ground upon which we place our decision rests upon undisputed and well-established facts.

It appears that the conveyances of the valuable real estate held by the bankrupt, other than Lot 16, were made to secure appellant, who refused the conveyances because she evidently preferred to rely upon her judgment lien which antedated the deeds by about two months. We cannot doubt that the taking of the judgment by appellant, as well as the conveyances in blank for her benefit, were intended by the bankrupt to be, and were in fact, preferences. 11 USCA § 96. They both were, if established, valid grounds for adjudicating Bechdolt a bankrupt in view of his admission of insolvency.

While petitioners did not plead the taking of the judgment as an act of bankruptcy, it is closely connected with and, we believe, a part of the act so charged. Under the circumstances, the court should view the pleadings as amended to conform to the proof and enter judgment accordingly. Burgner-Bowman Lumber Co. v. McCord Kistler Mercantile Co., 114 Kan. 10, 216 P. 815, 35 A. L. R. 242; Henson & Sons Coal Co. v. Strickland, 152 Ark. 203, 238 S. W. 5, 21 A. L. R. 328.

There was, and could be, no dispute about the taking of this judgment by appellant nor the effect of it so far as making her a preferred creditor is concerned. In fact, it is tolerably clear that the sending of the deeds to Jaqua, leaving the grantee blank, was but the second step (the taking of the judgment being the first) whereby bankrupt intended to perfectly secure appellant, to the detriment of his other creditors.

That the bankrupt "suffered or permitted" (see Bankruptcy Act, § 3, 11 USCA § 21) the judgment to be entered against himself in favor of the appellant is too well established by the facts and inferences arising therefrom to permit of successful denial. The persuasive facts which necessitate such a finding are: The action of Attorney Jaqua ·in appearing alternately and sometimes simultaneously as attorney for the bankrupt and for the creditor is most significant. He first appeared as attorney for appellant to take the judgment against the bankrupt. Very shortly thereafter he received a deed of valuable property from the bankrupt for legal services, which bankrupt stated Jaqua had rendered him. About the same time he received deeds from the bankrupt, which were for the benefit of the appellant, the judgment creditor. A few days later Jaqua represented the bankrupt in opposing the adjudication in bankruptcy here involved, and shortly thereafter withdrew his appearance for said bankrupt, and opposed the adjudication as attorney for the appellant, the judgment creditor. Moreover, the fact that the bankrupt, shortly after judgment was entered, executed deeds in blank and mailed them to Attorney Jaqua, who at the time represented the judgment creditor, is explainable on no other hypothesis than that the bankrupt suffered or permitted the judgment to be entered, which judgment he sought to further secure by the execution of deeds in blank, which deeds he delivered to appellant's attorney to be by him used in a manner to best promote the preference of appellant.

The order of adjudication is affirmed.